**Annette ELAM, mother of Victor Elam and Valance Elam, by next friend Callie Elam, and Barbara Hardison, mother of Bobbie Kris Hardison by next friend Jerene D. Hardison, all individually and on behalf of all other persons similarly situated, Plaintiffs,**

**v.**

**John HANSON, Director of Public Welfare for the State of Ohio, and Donald Morrow, Director of Lucas County Welfare Department, Defendants.**

**Civ. No. C 71–286.**

United States District Court,
N. D. Ohio, W. D.

Oct. 1, 1974.

James M. Klein, University of Toledo, College of Law, Joseph F. Vargyas and C. Thomas McCarter, Advocates for Basic Legal Equality, Toledo, Ohio, Prof. Thomas F. Willging, Antioch College of Law, Washington, D. C., for plaintiffs.

Kevin Duffy, Asst. Atty. Gen. of Ohio, Columbus, Ohio, Joseph Jan, Toledo, Ohio, for defendants.

Willmot R. Hastings, Chief Counsel, H. E. W., Washington, D. C., Frank A. Justen, Asst. U. S. Atty., Toledo, Ohio, amicus curiae.

## OPINION AND ORDER

DON J. YOUNG, District Judge.

This cause came to be heard upon motion by plaintiffs for summary judgment. The parties indicate and the Court agrees that there is no genuine issue as to any material fact, there being only a dispute of law. Therefore this case is ripe for summary adjudication pursuant to Rule 56, Fed.R.Civ.P.

Plaintiffs in the class action are residents of Lucas County, Ohio, who are recipients of state Aid to Families with Dependent Children (AFDC) and also full-time students and receive, or are eligible for, federal Old Age, Survivors and Disability Insurance (OASDI) under 42 U.S.C. § 402(d)(1)(B)(i).[1] All of the named plaintiffs have had their AFDC benefits, or eligibility for benefits, reduced by the amount of the monthly OASDI payments as a result of the Ohio Department of Public Welfare considering the amounts of OASDI as "available income" in computing the amount of family income for determining the need for and amount of welfare assistance.[2]

1. 42 U.S.C. § 402(d) provides in pertinent part:

(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 18, and

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed,

(ii) if such individual has died, at the time of such death, or

(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,

shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs—

(D) the month in which such child dies, marries, or is adopted (except for adoption by a stepparent, grandparent, aunt, uncle, brother, or sister subsequent to the death of such fully or currently insured individual),

(E) the month in which such child attains the age of 18, but only if he (i) is not under a disability (as so defined) at the time he attains such age, and (ii) is not a full-time student during any part of such month,

(F) if such child was not under a disability (as so defined) at the time he attained the age of 18, the earlier of—

(i) the first month during no part of which he is a full-time student, or

(ii) the month in which he attains the age of 22, . . .

2. 42 U.S.C. § 602 which sets forth provisions for AFDC states in part:

§ 602. *State plans for aid and services to needy families with children—Contents—Approval by Secretary*

(a) A State plan for aid and services to needy families with children must . . . (7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income; (8) provide that, in making the determination under clause (7), the State agency—

(A) shall with respect to any months disregard—

(i) all of the earned income of each dependent child receiving aid to families with dependant children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time

A consent judgment order was entered in this case on November 10, 1971, which found that the defendants should regard benefits received by persons between the ages of 18 and 22 under 42 U.S.C. § 402(d)(1)(B)(i) as not available to support minor children enrolled in the AFDC program, and further required the defendants to promulgate a regulation excluding all monies received under 42 U.S.C. § 402(d)(1)(B)(i) as "available income." This latter regulation was duly formulated as § 452.12, Manual Transmittal Letter No. 160, dated January 10, 1972. Apparently, the Department of Health, Education and Welfare, which is responsible for the administration of the federal program of providing matching funds under AFDC, took the position that the state regulation formulated as a result of the consent order raised a question of compliance with respect to federal law and regulation and that state payments under

the policy were not subject to federal matching. Subsequently, defendants sought a vacation of the consent order by motion for relief from final order pursuant to Rule 60(b)(6), Fed.R.Civ.P. which was granted June 21, 1973 with a proviso by means of a preliminary injunction that the Ohio Department of Public Welfare enforce the provisions of § 452.12 of the Ohio Public Assistance Manual during the pendency of the suit.

The issue at the heart of this controversy is easily stated: whether monies received under the OASDI program is to be included within the available income definition for purposes of determining AFDC benefits. When viewed against the background of congressional purpose, the Court believes that this legal issue is easily resolved.

It is apparent from the statute[3] and its legislative history that the purpose of OASDI payments under § 402(d)(1)

student or part-time student who is not a full-time employee attending a school, college, or university, or a course of vocational or technical training designed to fit him for gainful employment, and

(ii) in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month (except that the provisions of this clause (ii) shall not apply to earned income derived from participation on a project maintained under the programs established by section 632(b)(2) and (3) [42 USCS § 632(b)(2), (3)]); and . . .

The above statute is implemented in part by regulations promulgated by the Department of Health, Education and Welfare which are contained in 45 C.F.R. § 233.20 which provide:

§ 233.20 *Need and amount of assistance.*
(a) *Requirements for State Plans.* A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below:
(1) *General.* Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis

and all types of income will be taken into consideration in the same way, except where otherwise specifically authorized by Federal statute.

(2) *Standards of assistance.* (i) Specify a statewide standard, expressed in money amounts, to be used in determining (a) the need of applicants and recipients and (b) the amount of the assistance payments.

\* \* \* \* \*

(vi) If the State agency holds relatives responsible for the support of applicants and recipients, (a) include an income scale for use in determining whether responsible relatives have sufficient income to warrant expectation that they can contribute to the support of applicants or recipients, which income scale exceeds a minimum level of living and at least represents a minimum level of adequacy that takes account of the needs and other obligations of the relatives; and (b) provide that no request will be made for contributions from relatives whose net cash income is below the income scale. In family groups living together, income of the spouse is considered available for his spouse and *income of a parent is considered available for children under 21.* (Emphasis added).

3. Social Security Amendments of 1965, Pub. L. No. 89–97, § 306, 79 Stat. 286, amending 42 U.S.C. § 402(d)(1)(B).

is to defray the education expenses of recipients so that they can remain in school on a full-time basis. The legislative history states in part:

> The committee believes that a child over age 18 who is attending school full time is dependent just as a child under 18 or a disabled older child is dependent, and that it is not realistic to stop such a child's benefit at age 18. A child who cannot look to a father for support (because the father has died, is disabled, or is retired) is at a disadvantage in completing his education as compared with the child who can look to his father for support. Not only may the child be prevented from going to college by loss of parental support and loss of his benefits; he may even be prevented from finishing high school or going to a vocational school. With many employers requiring more than a high school education as a condition for employment, education beyond the high school level has become almost a necessity in preparing for work.
>
> The committee believes it is now appropriate and desirable to provide social security benefits for children between the ages of 18 and 22 who are full-time students and who have suffered a loss of parental support.
> S.Rep.No.404, 89th Cong., 1st Sess. (1965) (U.S.Code Cong. & Admin. News, 89th Cong., 1st Sess. 1943, pp. 2036–2037 (1965)).

As one court stated:

> It is apparent that the purpose of the full-time student provision of Section 202(d) of the Act [42 U.S.C. § 402(d)] is to help defray the expenses of those students attending education-

al institutions on a full-time basis. Miller v. Richardson, 320 F.Supp. 313, 316 (S.D.W.Va.1970).

▮ From the construction of the statute itself it is abundantly clear, and the Court so finds, that Congress sought to provide the OASDI recipient with funds for obtaining an education. OASDI benefits to eligible children normally terminate when the recipient attains the age of 18. However, the benefits for a child under OASDI continues between the ages of 18 and 22 whenever the child is a full-time student. If the child over 18 ceases to be a full-time student, the OASDI benefits under § 402(d) terminate. It is thus plain from the expressed intent of Congress in the legislative history and the statutory language enacted that OASDI benefits under § 402(d)(1)(B)(i) are intended to provide education for the recipient.

The present litigation was instituted because it appeared that the purpose of § 402(d)(1)(B)(i) was being frustrated by the policy of the Ohio Department of Public Welfare, in compliance with HEW standards, of including within the meaning of "available income" for the purposes of AFDC the amounts received of OASDI recipients under § 402(d)(1)(B)(i). It is thus the case of persons 18 to 22, receiving assistance under OASDI who are unmarried and full-time students eligible also for AFDC for their dependent children, being deprived supplementary assistance of the welfare program because they are attempting to get an education. Such an interpretation of the interaction of the OASDI program and AFDC programs defeats the purpose of both programs.[4] One program, OASDI under

---

4. The purposes of AFDC are set out in 42 U.S.C. § 601 as:

§ 601. *Appropriations*

For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help main-

tain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is [hereby] authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part [42 U.S.C.A. §§ 601–610, 42 USCS §§ 601–610] . . . .

§ 402(d)(1) seeks to aid a recipient in obtaining an education while the other program, AFDC, seeks to assist in the care of dependent children in their own homes or the home of a relative.

■ The Court must attempt to enforce both applicable statutes in such a manner that the overriding purposes of the two statutes are achieved, even if the words used in the laws and regulations leave room for a contrary interpretation. *See* Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). Many cases have pointed out that the Social Security Act is a remedial statute, to be broadly construed and liberally applied. *See e. g.*, Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969); Conklin v. Celebrezze, 319 F.2d 569 (7th Cir. 1963).

Broadly interpreting the statutes at issue in this case to achieve the purposes intended by Congress, the Court concludes that monies received from OASDI pursuant to § 402(d)(1)(B)(i) should be excluded from the income and resources of the family for the purposes of determining eligibility and level of supports under AFDC provisions of 42 U.S.C. § 602(a) and regulations promulgated thereunder. The Court concludes that OASDI benefits under § 402(d)(1)(B)(i) are the same as funds received under the federal Work Study Program, 42 U.S.C. § 2751 et seq. This Court has previously held in Brown v. Bates, 363 F.Supp. 897 (N.D.Ohio 1973) that work study monies should be excluded from calculation of available income under AFDC. The concluding remarks of the *Brown* opinion are equally appropriate to this case.

The welfare system in this country has come under attack from almost every corner. The Court, bound by the limitations of this opinion, will not defend nor attack the system as it presently operates. But the Court does believe that the purpose of the Work-Study Program as enacted by Congress is to provide finances, through employment, for needy students who desire an education. If the money gained by participation in the Work-Study Program is then used to further decrease grants under other federal assistance programs, the incentive of the Work-Study Program is greatly diminished. Congress, through the Work-Study Program, has attempted to provide a vehicle for the indigent to use to escape the poverty cycle. If the money earned by the participants in the Work-Study Program is applied against other assistance programs, that vehicle's utility is much weakened, and in many cases totally destroyed. The Court does not believe Congress chose by enactment of the Work-Study Program to draw the cycle of poverty tighter, but rather was attempting to break its bonds upon untrained poor. The Court will not allow the defendants to defeat this beneficient purpose by their own interpretation of the law, especially when that interpretation, however faithful it may be to the letter of the law, totally defeats the spirit of the law, and serves only a sterile administrative purpose. 363 F.Supp. at 902–903.

In this case, the Court does not believe that Congress could have intended by one project to aid OASDI recipients who desire education by providing benefits while they pursue a full-time course of study and then by another program to reduce the amount of benefits paid on behalf of dependent children of that OASDI recipient. It amounts to the federal government holding out a promise of aid for education with one hand and at the same time with the other hand having the state government, spurred by federal regulations, destroying that promise of aid. The Court finds that Congress has provided two assistance programs aimed at two distinct needs. Assistance for the one need, maintaining the family unit where one parent is unmarried, should not be reduced because a separate need of that parent for education is also present at the same time.

554

The Court holds that under the rationale of Brown v. Bates, *supra,* monies received under 42 U.S.C. § 402(d)(1)(B)(i) are excluded from income or resource calculations under 42 U.S.C. § 602(a) and regulations thereunder.

Therefore, for the reasons stated herein, it is

Ordered that the motion filed by plaintiffs for summary judgment should be and hereby is granted and the clerk shall enter judgment in favor of plaintiffs against defendants.

Is is so ordered.