Leah LEVESQUE

v.

**COMMISSIONER, DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1985.

Decided April 24, 1986.

James R. Crotteau, (orally), Bangor, for plaintiff.

Katherine Greason, (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The plaintiff, Leah Levesque, appeals from a judgment of the Superior Court (Kennebec County) affirming a fair hearing decision of the Maine Department of Human Services (DHS) upholding its suspension of her July, 1984, monthly benefits under the Aid to Families with Dependent Children (AFDC) program on the ground that her income in May, 1984, exceeded the program's gross income limit. She argues on appeal that the DHS, in determining her grant amount for July, violated federal law and regulation in counting her income earned in May when that income was not

available to meet her family's needs in July. She also argues that the DHS was required to determine her eligibility to receive AFDC benefits in May based on income earned in that same month. We find no error and affirm the judgment.

The facts are not in dispute. The plaintiff had been receiving AFDC benefits for herself and minor child since 1981. In May, 1984, while receiving a $253.00 AFDC grant, the plaintiff had a temporary job preparing the grounds of a cemetery for the observance of Memorial Day. On June 6, 1984, in accordance with federal and state regulations, she reported to the DHS that she had earned $565.25 in the previous month. Because that amount exceeded by $11.00 the allowable income of an AFDC recipient,[1] by notice dated June 22, 1984, the DHS informed the plaintiff that her AFDC benefits would be suspended temporarily for the month of July.

The suspension of the plaintiff's AFDC grant resulted from a calculation made by the DHS pursuant to the federally imposed retrospective budgeting requirements. *See* 42 U.S.C. § 602(a)(13)(A)(ii) (Supp.1985); 45 C.F.R. § 233.31 (1985). Under retrospective budgeting, the amount of a recipient's AFDC benefit is computed by comparing the income or circumstances of the family unit in the second month preceding the month in which the payment will be made, with the state standard of need. Since the plaintiff's income in May, the second month preceding July, exceeded the agency's allowable income limits, the DHS calculated the plaintiff's grant amount for July to be zero.

The plaintiff requested a fair hearing, which was held on July 16, 1984. The hearing officer affirmed the temporary suspension of benefits and the plaintiff subsequently filed a complaint in Superior Court alleging that the agency action violated 42 U.S.C. § 1983 (1984). She also sought review of the hearing officer's deci-

sion pursuant to 5 M.R.S.A. § 11001 (1979 & Supp.1985–1986). The plaintiff contended that another provision of the AFDC program prevents the DHS from counting income received in May in determining the amount of her July grant when that income is not available in July to provide for that month's household needs. She had received no income from May 25, 1984, when her cemetery job was terminated, to July 16, 1984, the date of the administrative hearing. The Superior Court, concluding that the applicable law permitted a determination of "eligibility for assistance based on a person's circumstances in the second month prior to the application for assistance," affirmed the agency's decision. Pursuant to Rule 59(e), the plaintiff sought alteration or amendment of the judgment to reflect her contention that eligibility must be determined on a prospective basis and that the DHS failed to do so in determining her eligibility for the month of May, 1984. The Superior Court denied the motion and this timely appeal followed.

The AFDC program, currently codified at 42 U.S.C. §§ 601–626, is designed to provide financial assistance to needy dependent children and the parents or relatives who care for them. The federal government provides funds for a large segment of the program and furnishes matching funds to states that elect to participate in it. In return, participating states are responsible for the administration of the program at the local level pursuant to a state plan that conforms to applicable federal statutes and regulations. 42 U.S.C. § 602. *See generally Littlefield v. State, Dep't of Human Serv.,* 480 A.2d 731 (Me. 1984). Among these provisions are the two relevant here, section 602(a)(7), which requires consideration of "income" for purposes of determining need, and section 602(a)(13), which requires a state to calculate benefit amounts on a retrospective ba-

---

1. In July, 1984, the maximum gross income a Maine AFDC recipient could earn in a household composed of one adult and one child was $554.00. Maine Public Assistance Manual, ch. II, § D at 1, 3.

sis and determine eligibility on a prospective basis.

Specifically, section 602(a)(7)(A) requires a state, in determining financial need, to consider the "income and resources of any child or relative claiming aid to families with dependent children." In 1975, the Secretary promulgated a regulation that defined the term "income and resources" as used in the statute. 40 Fed.Reg. 12,508 (March 19, 1975). At the time that the DHS calculated the plaintiff's grant amount, that regulation read:

> [I]n determining need and the amount of the assistance payment ... income ... and resources available for current use shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 233.20(a)(3)(ii)(D) (1983). By requiring that the income to be considered by a state must be income that is "available for current use," the regulation embodies the long-standing availability principle, which is designed "to prevent the States from relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." *Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 1148, 84 L.Ed.2d 138 (1985). The regulation thus provides a benchmark for determining what assets qualify as income for purposes of the Act. An example of the consideration of the actual availability regulation is seen in *Owens v. Heckler,* 753 F.2d 675 (8th Cir.1985), where the court held that Iowa could not consider as income educational benefits that were required to be applied towards the recipient's education unless those benefits were not actually used to meet her educational expenses. *Id.* at 679–80.

The retrospective accounting procedure, enacted by Congress as part of the Omnibus Budget Reconciliation Act (OBRA) of 1981, Pub.L. No. 97–35, 95 Stat. 357, similarly requires a state to determine need based on income but specifies that the income which is to serve as the basis for the state's calculation of the amount of assistance be the actual income that existed in the second preceding month. Section 602(a)(13)(A)(ii) states that, with respect to families that are required to report monthly income, such as the plaintiff's, a state must "determine the amount of such aid on the basis of the income and other relevant circumstances in the first or, at the option of the State ... second month preceding such month." *See also* 45 C.F.R. § 233.-31(a) (1985).[2]

Pursuant to the statutory requirement, the DHS has adopted retrospective budgeting. *Maine Public Assistance Payments Manual* ch. II, § D at 11–15. The Secretary has approved Maine's exercise of the option to calculate the amount of assistance based on the recipient's actual income in the second month preceding the payment, known as the budget month. 45 C.F.R. § 233.31(b)(3) (1985).

In requiring states to adopt retrospective budgeting, the Congress thought substantial savings could be made by the elimination of errors and the more rapid adjustments of payments. S.Rep. No. 97–139, 97th Cong., 1st Sess. 517, *reprinted in* 1981 U.S. Code Cong. & Ad. News, 396, 783–84. The Senate Report stated:

> Under the retrospective accounting system, States would have to determine a family's eligibility for benefits on the basis of income and other factors in the current month, but the amount of the benefits would be determined on the ba-

2. That subsection provides in part:

(a) *Requirements for State plans.* A State plan for AFDC shall specify that all factors of eligibility shall be determined prospectively and the amount of the assistance for any month for all assistance units required to file a monthly report for the month designated as the budget month under the State's retrospective budgeting procedures shall be determined using retrospective budgeting as provided in §§ 233.31–233.37 except as provided in § 233.34.

sis of the circumstances in the previous month, i.e., on a monthly retrospective basis. (At the option of the State, but only where the Secretary determines it to be appropriate, payment amount could be determined on the basis of income and circumstances in the second preceding month. This may be necessary, for example, when the payment date is in the first week of the month and the State needs time to process the required monthly report.) . . .

The State would require all recipients to provide monthly reports on income, family composition, resources, etc., as a condition of the continued receipt of aid under the plan. These reports would pertain to the just-passed month, as well as to income and other matters relevant to eligibility and benefits expected in the coming month. The State would also be directed to take prompt action, accompanied by concurrent notice to the recipient, to implement changes he reports to the State or to terminate aid for failure to report.

The committee decision is based on the fact that the prospective system used by most States results in unavoidable error in that it is not possible to predict changes which may take place in an upcoming month and which may affect the AFDC payments. Overpayments and underpayments inevitably occur. In addition, at the present time in most States a recipient is required to report changes in income only when they occur. Most States have no formal system for reporting such changes, and delayed reporting is the cause of a significant percentage of AFDC errors.

*Id.* at 516–17, *reprinted in* 1981 U.S. Code Cong. & Ad. News at 783–84.

■ The plaintiff argues that, despite the clear mandate of the retrospective budgeting system, the DHS violated the availability regulation because that regulation requires that only income which will still be available in the month for which benefit payments will be made can be counted in determining her amount of assistance. We disagree.

The availability regulation is only intended to specify what constitutes income for purposes of the Act. When a state is directed to consider income, for whatever purpose, the regulation requires that the income considered be actually available. The DHS fully complied with the regulation when it calculated the amount of the plaintiff's July assistance payment by retrospective budgeting. It considered the plaintiff's income in May, the second preceding month, when that income was actually available. The availability regulation requires nothing more. We are not unaware of the difficulties to which a recipient is exposed if she receives a full AFDC benefit grant and also earns income in excess of her need in the budget month but fails to conserve funds to meet expenses in the payment month for which she does not receive an AFDC grant. Nevertheless, the regulatory mechanism clearly requires the DHS to determine the grant amount for the payment month based on available income in the budget month regardless of whether that income will still be available. Accordingly, we conclude that the DHS did not violate the availability regulation in calculating the amount of the plaintiff's July assistance payment.

Our conclusion is supported by the fact that if the availability requirement is interpreted as the plaintiff suggests, a state would be compelled to return to the system of determining grant amounts on a prospective basis, the very system Congress intended to abolish. *See id.* at 516, *reprinted in* 1981 U.S. Code Cong. & Ad. News at 782–83. Instead of an efficient and orderly determination of grant amount based on the recipient's income earned in the second preceding month, the state would have to determine every grant amount retrospectively and then prospectively determine whether that income would still be available in the payment month. It is implausible that Congress in-

tended the availability regulation to nullify the concept of retrospective budgeting.

 The plaintiff further argues that the DHS violated the Act and regulations promulgated thereunder by failing to determine her AFDC eligibility in May based on that month's income and other circumstances.[3] She asserts that, had she been determined ineligible for May benefits, she would not have received assistance in May when she had sufficient outside income but would have received assistance in July when she was in need of it. Even if she had received her May grant, the plaintiff contends that, had the DHS, upon learning that her income in May exceeded income guidelines, determined that she was ineligible, the payment she received would have been recoverable at a rate of 10% per month until the entire sum was recouped, thus leaving her with some financial resources in the month of July. 42 U.S.C. § 602(a)(22)(A); 45 C.F.R. § 233.20 (a)(13)(i)(A)(2) (1985).

The specific provisions regarding the determination of eligibility relied on by the plaintiff require a state to determine the eligibility of an AFDC recipient to continue to receive aid on a prospective basis. Contrary to the plaintiff's assertion, the DHS fully complied with this requirement.

Title 42 U.S.C. § 602(a)(13)(A)(i) mandates that a state "determine a family's eligibility for aid for a month on the basis of the family's income, composition, resources, and other similar relevant circumstances during such month." The corresponding regulation requires a state;

[to] determine all factors of eligibility prospectively for all payment months. Thus, the State agency shall establish eligibility based on its best estimate of income and circumstances which will exist in the month for which the assistance payment is made.

45 C.F.R. § 233.33(a) (1985). The "best estimate" is based on the agency's "reasonable expectation and knowledge of current, past or future circumstances." 45 C.F.R. § 233.31(b)(1) (1985).

Since AFDC checks are issued at the beginning of each month, a list of eligible AFDC recipients must be completed in advance of the first day of each month. In accordance with the above regulations, the DHS determined the plaintiff's eligibility for the month of May based on its best estimate of what her family's income was expected to be for that month. The plaintiff did not start work until April 23 and was not obligated to, and did not in fact, inform the DHS of that change in her circumstances until the beginning of June. Accordingly, the best estimate of the plaintiff's income, based on facts available to the DHS at the time it determined her eligibility, justified its conclusion that she would be eligible for May AFDC benefits as she had been the month before.

Contrary to the plaintiff's assertion, the DHS was not required to recover her May assistance payment according to the general rule for recoupment for overpayments. That rule limits recoupments to an amount that will leave an assistance unit in any month with money equal to at least 90% of the AFDC grant amount to which a family

---

**3.** The DHS asserts that the plaintiff is foreclosed from raising the prospective eligibility issue because she failed to raise it before the Superior Court or at the administrative hearing level. We disagree.

The plaintiff raised the issue in her timely motion to alter or amend the Superior Court judgment made pursuant to Rule 59 of the Maine Rules of Civil Procedure. Rule 73(a) provides that an appeal from a judgment preserves for review any claim of error with respect to a post-verdict order pursuant to Rule 59. M.R.Civ.P. 73(a) advisory committee's note

to 1962 and 1966 amends., 2 Field, McKusick & Wroth, *Maine Civil Practice* § 73, at 153 (2d ed.1970); *see Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 701 (2d Cir.1972). Moreover, since this matter arises under a complaint based on 42 U.S.C. § 1983, the plaintiff is not required to exhaust her administrative remedies. *Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 499–500, 102 S.Ct. 2557, 2559, 73 L.Ed.2d 172 (1982). Accordingly, the merits of the plaintiff's second issue raised on appeal are properly before us.

of the assistance unit's size and composition would be entitled. 42 U.S.C. § 602(a)(22)(A); 45 C.F.R. § 233.-20(a)(13)(i)(A)(2). An overpayment is defined as "a financial assistance payment received by or for an assistance unit for the payment month which exceeds the amount for which that unit was eligible." 45 C.F.R. § 233.20(a)(13)(i) (1985). However, when the plaintiff reported in June her monthly income earned in May, she informed the DHS that her source of income was temporary and would not continue past May. Since the plaintiff would therefore be eligible for the following payment month based on the best estimate of the DHS, the DHS had the option to recover the overpayment pursuant to 45 C.F.R. § 233.20(a)(13)(i). That section provides:

> The agency may deny assistance for the corresponding payment month rather than recover (the overpayment) if the assistance unit was ineligible for the budget month, the State becomes aware of the ineligibility when the monthly report is submitted, the recipient accurately reported the budget month's income and other circumstances, and the assistance unit will be eligible for the following payment month.

(parentheticals omitted).

Furthermore, 45 C.F.R. § 233.34(d)(1), (2) (1985) provides that a "State may suspend, rather than terminate, assistance when ... [t]he agency has knowledge of, or reason to believe that ineligibility would be only for one payment month; and [i]neligibility for that one payment month was caused by income or other circumstances in the corresponding budget month." The corresponding Maine provision found in MPAPM, ch. II, § D at 11–12 authorizes the DHS to suspend a recipient for one month only when DHS has "knowledge of, or reason to believe, the assistance unit would be ineligible for one payment month only ... and ineligibility for that one payment month was caused by income or other circumstances in the corresponding [budget] month."

Under these provisions, the DHS was authorized to suspend the plaintiff's assistance in the July payment month based on the overpayment she received in the May budget month. Moreover, since the DHS suspended, rather than terminated, the plaintiff's eligibility and assistance payments, the laws and regulations relating to initial determination of eligibility and grant amount are inapplicable. *See* 42 U.S.C. § 602 (a)(13)(B) (Supp.1985); 45 C.F.R. § 233.24(a), (b) and (c); MPAPM, ch. II, § D, p. 12.

Based on the foregoing, we conclude that the DHS complied with applicable federal and state law and regulation by determining the plaintiff's eligibility prospectively for May, 1984 and by properly suspending her AFDC grant for July, 1984.

The entry is:

Judgment affirmed.

All concurring.