Dorothy **COLLINS, et al., Plaintiffs,**

v.

Patricia K. **BARRY, et al., Defendants.**

No. C69–830.

United States District Court,
N.D. Ohio, E.D.

Sept. 19, 1986.

Robert H. Bonthius, Jr., Carolyn L. Carter, Cleveland, Ohio, for plaintiffs.

Dennis G. Nealon, Asst. Atty. Gen., Columbus, Ohio, for defendants.

BATTISTI, Chief Judge.

On January 22, 1971, an order was entered which prohibited the state and county public welfare departments from defining in a certain way the "family unit rule," which defendants employed to determine eligibility and payment levels for the Aid to Families with Dependent Children ("AFDC") program. Under that former state rule, Social Security Old-Age, Survivors, and Disability Insurance ("OASDI") or Title II income of child beneficiaries was treated as income available to the family generally. As a result of this rule, AFDC benefits were denied or paid at reduced levels to the families of which a member was receiving OASDI benefits. Plaintiffs claimed that OASDI benefits were to be used exclusively for the intended beneficiaries, and to do otherwise would be to violate certain fiduciary duties under federal law.

Two questions were raised in plaintiffs' suit: an alleged deprivation of the Fourteenth Amendment right to equal protection of the laws, and the incompatibility of the state procedure with federal social security statutes and regulations. Because of the finding that a conflict between state and federal law existed, there was no need to reach the question of equal protection.[1] Depending on which side one takes in the present matter, these two issues once again may or may not exist in this Court. Plaintiffs argue that these two issues do in fact remain; defendants argue that through the Deficit Reduction Act of 1984, the addition of § 402(a)(38) to Title IV of the Social Security Act definitively resolved these issues. Defendants specifically argue that in light of this statutory change, the federal-state conflict underlying the 1971 injunction no longer exists. Accordingly, defendants have moved the Court for relief from the order of January 22, 1971. On the other hand, plaintiffs have requested an order holding defendants in contempt for violation of this order.

The issue to be resolved is whether 42 U.S.C. § 602(a)(38) requires recipients of OASDI benefits to be counted in the "standard filing unit" when determining AFDC benefits. Admittedly, the instant case presents a slight twist insofar as the parties and the Court must deal with an earlier injunction prohibiting what defendants now

---

1. Plaintiffs renew their argument based on equal protection grounds. *See* Plaintiffs' Motion to Show Cause 13 n. 12. This appears to be another problem which was not addressed by either Congress in passing the amending legislation here under examination, or by the Executive in proposing the amendment and in implementing it. As such, the equal protection problem, though standing alone perhaps insufficient to support the holding reached today, provides further evidence to support the conclusion that Congress did not mean to repeal the various statutory provisions, cited and discussed *infra*, which ultimately led to the order of January 22, 1971.

are doing under the claimed shield of state and federal law. Nevertheless, the issue still remains as to whether the Deficit Reduction Act did indeed bring about the changes which defendants argue, and the answer to this question still requires an examination of § 602(a)(38). Defendants argue that the recent statutory amendments promulgated through the Deficit Reduction Act require this inclusion. Plaintiffs argue that the amendment requires this inclusion only in certain limited circumstances. Good lawyering combined with unclear and ambiguous congressional and executive action have forced a judicial resolution to this rather complex issue.

Arguments from both sides presented to the various district courts which have dealt with this issue have produced well-reasoned opinions but at times irreconcilable results. Upon consideration of these holdings and of the excellent briefing of this issue in the matter now before the Court,[2] defendants are hereby adjudged in contempt of this Court for having violated the terms of the final judgment entered in this case on January 22, 1971. Accordingly, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On January 22, 1971, a final order was issued in this matter. The case concerned families in which one or more children received OASDI benefits, provided under Title II of the Social Security Act, paid to them through a parent acting as their fiduciary (then called "trustee," now called "representative payee"). The Director of the Ohio Department of Public Welfare (now the Ohio Department of Human Services) had promulgated and was then enforcing a "family unit rule," Ohio Public Assistance Manual ("OPAM") § 452.1, which was utilized to determine eligibility and payment levels in the AFDC program.

Under the rule, the OASDI income of child beneficiaries was treated as income available to the family (i.e., parents and half-siblings) generally. As a result of this rule, AFDC benefits were denied or paid at reduced levels to needy children in the family unit who themselves did not receive OASDI benefits.

2. The Court held that the family unit rule conflicted with the language and spirit of the social security laws. The rule violated specifically 42 U.S.C. §§ 402(d) and 408(e), which entitled OASDI child beneficiaries to receive OASDI benefits in their own right and which obligate their representative payee to devote the benefits to their use and benefit or face prosecution. The rule also violated the AFDC availability principle enunciated in *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970) (holding that income of stepfathers or certain non-legally obligated men could not be assumed to be available to needy children under 42 U.S.C. § 602(a)(7)), by treating OASDI benefits of non-legally obligated children as available to the needy children in the family unit. The family unit rule further had the untoward effect of forcing the representative payee to violate her fiduciary relationship with the OASDI beneficiaries by using OASDI benefits to support the needy children in the family.

3. Accordingly, the Court permanently enjoined defendants "from enforcing Section 452.1 of the Ohio Public Assistance Manual as it now reads, so as to include as 'available family income' any income which under the terms of the Social Security laws and regulations is not available to the family generally but is restricted to the use and benefit of a named beneficiary." Order, Jan. 22, 1971, at 6. This permanent injunction ran in favor of the plaintiff class, which consisted of all Ohio families in which there are both needy children and children receiving OASDI benefits.

---

**2.** In their Motion for Relief from Judgment, defendants requested that their motion as well as plaintiff's Motion to Show Cause be set for hearing. The parties had an opportunity to present their arguments briefly to the Court during an in-chambers conference. Further-

more, excellent briefing of this matter by both sides has greatly assisted the Court in resolving this matter. Consequently, for these reasons and with the hope of expediting this present order, the Court decided that an additional formal hearing in this matter was unnecessary.

4. On July 18, 1984, Congress passed the Deficit Reduction Act of 1984, part of which amended Title IV of the Social Security Act (the AFDC program) by adding a new paragraph (38) to § 402(a). Codified at 42 U.S.C. § 602(a)(38), the new paragraph provides:

(a) A state plan for aid and services to needy families with children must

*    *    *    *    *    *

(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

(A) any parent of such child, and

(B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 406(a) [42 U.S.C. § 606(a)], if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (notwithstanding section 205(j) [42 U.S.C. § 405(j)] in the case of benefits provided under title II).

5. On September 10, 1984, the United States Department of Health and Human Services promulgated a regulation interpreting 42 U.S.C. § 602(a)(38). See 49 Fed. Reg. 35586 et seq. Codified at 45 C.F.R. § 206.10(a)(1)(vii), the regulation, which became effective October 1, 1984, provides:

For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance:

(A) Any natural or adoptive parent, or stepparent (in the case of States with laws of general applicability); and

(B) Any blood-related or adoptive brother or sister.

6. Effective October 1, 1984, the Ohio Department of Human Services adopted an AFDC "standard filing unit rule" interpreting this federal regulation. A consequence of this rule's enforcement is the defendants' adoption of a policy whereby OASDI benefits of a child paid through a representative payee are treated as income available to the family generally when determining AFDC eligibility and payment level for the entire family. Before plaintiffs' filing of their Motion to Show Cause, defendants did not seek any order from this Court to modify in any way the order of January 22, 1971, despite their conduct which, by their own admission, was contrary to the terms of that order. See Defendants' Motion for Relief from Judgment 12.

7. Defendant Patricia K. Barry, currently Director of the Ohio Department of Human Services, is responsible for the administration of the ADC program in Ohio and promulgated OPAM § 4501 and Ohio Administrative Code ("OAC") § 5101:1–21–011, known as "the standard filing unit rule."

8. Plaintiff Marquittius Bearden is a class member affected adversely by the new standard filing unit rule and brings this contempt action by and through her grandmother, Daisy Bearden.

9. Daisy Bearden is the grandmother of Marquittius and Marquittius' half-sister, Latonya Bearden. Latonya and Marquittius (ages 15 and 11, respectively) are daughters of Linda Bearden, Daisy Bearden's daughter, but by different fathers.

10. Until November 1985, Daisy Bearden received AFDC benefits for both Latonya and Marquittius. That month Latonya began to receive OASDI benefits because her father had died. Daisy Bearden received these payments as Latonya's representative payee. Marquittius does not receive OASDI benefits because she had a different father.

11. Due to the operation of the standard filing unit rule, Marquittius was denied AFDC benefits because of the OASDI benefits paid to her half-sister, Latonya, through Daisy Bearden, Latonya's representative payee.

12. But for the standard filing unit rule, Marquittius would have been entitled to receive $180 per month in AFDC benefits.

13. On May 2, 1986, plaintiffs filed a Motion to Show Cause asking this Court to hold defendant Patricia K. Barry in contempt for violating this Court's previous order of January 22, 1971.

14. On May 27, 1986, defendant Barry filed a Reply to the Motion to Show Cause, arguing that the order of January 22, 1971 had expired according to its own terms, that impossibility of performance had relieved her of the injunction, and that changes in the law, specifically the enactment of 42 U.S.C. § 602(a)(38), had made the order of January 22, 1971 obsolete.

15. On June 11, 1986, defendant Barry also filed a Motion for Relief from Judgment under Fed.R.Civ.P. 60(b) to seek a dissolution of the order of January 22, 1971 on the grounds that federal law underlying the injunction had been changed by the enactment of § 602(a)(38).

16. The order of January 22, 1971 remains in full force and effect. It has not been modified or reversed. Nor has defendant Barry previously sought relief from that order, and her enforcement of the standard filing unit rule continues unabated.

### CONCLUSIONS OF LAW

1. The permanent injunction ordered by this Court on January 22, 1971 remains in full force and effect. The addition of 42 U.S.C. § 602(a)(38) to the Social Security Act, accomplished through the passage of the Deficit Reduction Act of 1984, did not undermine the validity of such order. This amendment did not repeal, either expressly or impliedly, 42 U.S.C. §§ 402(d) and 408(e), the statutory basis of the order of January 22, 1971. Under these provisions, OASDI benefits paid to a representative payee in trust for a minor beneficiary cannot be deemed as income available to the family generally but are restricted to use for the sole benefit of the minor beneficiary. *White Horse v. Heckler*, 627 F.Supp. 848,

852 (D.S.D.1985); *Frazier v. Pingree*, 612 F.Supp. 345 (M.D.Fla.1985).

2. Reading the ambiguous language of § 602(a)(38) as an implied repeal of §§ 402(d) and 408(e) violates the well-established rule of construction against such implied repeals where another construction is possible. Repeals by implication are not favored, and apparently conflicting statutes should be interpreted in a way that gives effect to each. *Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981); *United States v. Hansen*, 772 F.2d 940 (D.C.Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986). Implied repeals should only be found where the manifest and clear intent of Congress so indicates. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 *reh'g denied*, 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1045 (1982).

3. Defendant Barry's interpretation of § 602(a)(38) would work an implied repeal of §§ 402(d) and 408(e). Because it is neither clear nor manifest that Congress intended to repeal §§ 402(d) and 408(e), this Court rejects defendant Barry's interpretation.

4. At the same time, a strong presumption attaches requiring a court to give some meaning to all statutory language. *Rosado v. Wyman*, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970) (construing "all legislative enactments to give them some meaning" in the context of potentially conflicting statutory provisions of Title II and AFDC). To attribute meaning to § 602(a)(38) while at the same time retaining the meaning of §§ 402(d) and 408(e), the Court construes § 602(a)(38) to require the inclusion of OASDI benefits of a child which are either legally available or actually made available to the family generally by the representative payee, but not otherwise. Thus, where a representative payee actually makes a portion of a child's OASDI benefits available to the family generally, that portion is to be treated as income available to the family generally. *Gorrie v. Heckler*, 624 F.Supp. 85 (D.Minn.1985). Likewise, where a parent OASDI benefi-

ciary receives benefits through a representative payee, those benefits are to be treated as legally available to the beneficiary's children. *Cunningham v. Toan,* 728 F.2d 1101 (8th Cir.1984), *vacated,* 469 U.S. 1154, 105 S.Ct. 896, 83 L.Ed.2d 912 (1985), *modified on remand,* 762 F.2d 63. So construed, § 602(a)(38) puts a stop to the long-standing practice which allowed families to exclude at their option OASDI beneficiaries from the household, whether or not the benefits were actually or legally available to other family members.

5. Statutory support for this interpretation is also found at 42 U.S.C. § 407, which provides that OASDI payments are neither transferable nor assignable at law or in equity and shall not be subjected to any legal process. This inalienability provision is "all-inclusive" and has been strictly construed to limit transfers of any social security benefits. *Tidwell v. Schweiker,* 677 F.2d 560, 567 (7th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1874, 76 L.Ed.2d 806 (1983). It "imposes a broad bar against the use of any legal process to reach all social security benefits." *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 417, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). Thus, the coerced transfers of OASDI benefits, which necessarily result under the standard filing unit rule, facially violate the inalienability provision of 42 U.S.C. § 407(a). Congress could not have contemplated such a result through the enactment of § 602(a)(38), because it did not expressly refer to § 407, as required by § 407(b), when allegedly amending the inalienability provision. *Gorrie, supra,* at 90. *Compare* 42 U.S.C. § 659(a).

6. The standard filing unit rule also facially violates the terms of 42 U.S.C. § 602(a)(38), because it ignores that provision's conditional language which incorporates by reference 42 U.S.C. § 606(a)(1) and (2), which refers to "needy" children deprived of parental support or care for various reasons. The neediness condition is incorporated in 45 C.F.R. § 206.10(a)(1)(vii) by the phrase "and otherwise eligible for assistance." The standard filing unit rule violates this condition by automatically re-

quiring the inclusion of non-needy OASDI child beneficiaries.

7. The AFDC availability principle is also relevant to a resolution of the matter before the Court. Sec. 602(a)(38) refers to the determination of AFDC eligibility made under § 602(a)(7). Historically, the words "any income" as used in § 602(a)(7), and repeated in § 602(a)(38), have been held to include only income that is actually and/or legally available. *Heckler v. Turner,* 105 S.Ct. 1138, 1147–48 (1985); *Turchin v. Butz,* 405 F.Supp. 1263 (D.Minn.1976); *Elam v. Hanson,* 384 F.Supp. 549 (N.D. Ohio 1974); *Snider v. Creasy,* 728 F.2d 369 (6th Cir.1984). In the context of this case, OASDI benefits are clearly not legally available to the entire family by virtue of §§ 402(d), 408(e) and 407. Moreover, if a representative payee actually makes a beneficiary's OASDI benefits available to others, he or she is liable for criminal penalties under § 408(e). In light of the definitional limitations, defendants cannot assume existing income is automatically available to the other members of the family unit. The availability principle thus buttresses this Court's construction of § 602(a)(38) as being consistent with §§ 402(d), 408(e) and 407, as well as with the traditional understanding of § 602(a)(7).

8. Courts should accord substantial deference to administrative agencies' interpretation of statutes which they are charged to execute. *Blum v. Bacon,* 457 U.S. 132, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982); *Schweiker v. Hogan,* 457 U.S. 569, 102 S.Ct. 2597, 73 L.Ed.2d 227 (1982); *Miller v. Youakim,* 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979). The Court finds the most reasonable interpretation of 45 C.F.R. § 206.10(a)(1)(vii) to be that it incorporates the "neediness" requirement and thus is consistent with the Court's interpretation of § 602(a)(38). Even if this Court's reading of the regulation is wrong, however, the Court stands by its interpretation of the statute. While administrative interpretations should be accorded deference, they are not controlling. *Batterton v. Francis,* 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448

(1977). In particular, an administrative agency's interpretation cannot control when there are compelling indications that it is wrong, *New York State Dept. of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), or when such an interpretation would change the clear language of the law, *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Thus, the HHS interpretation of § 602(a)(38), found at 45 C.F.R. § 206.-10(a)(1)(vii), is not binding upon this Court, and this Court declines to defer to it to the extent that it violates 42 U.S.C. §§ 402(d), 407 and 408(e), as discussed above.

9. The order of January 22, 1971 is re-affirmed because the Court finds that the recent amendment of the Social Security Act through 42 U.S.C. § 602(a)(38) neither expressly nor impliedly repealed §§ 402(d), 407 or 408(e), provisions which specifically protect the OASDI benefits of child beneficiaries, nor abridged the AFDC availability principle. Thus, there are no grounds for relief from judgment under Fed.R.Civ.P. 60(b)(5) or (6).

10. For the foregoing reasons, defendant Barry is adjudged to be in contempt of this Court for having directly violated the injunction incorporated in the final order entered in this case on January 22, 1971.

11. Defendant Barry's other defenses to contempt are without merit. The order of January 22, 1971 has not expired, and defendant Barry has failed to establish that it was either factually or legally impossible for her either to have continued to comply with that order or to have sought relief from judgment in a timely fashion.

12. The Eleventh Amendment is no bar to the enforcement of the order of January 22, 1971, and is no bar to following a remedial order. *Fortin v. Commissioner of Mass. Dept. of Public Welfare*, 692 F.2d 790 (1st Cir.1982); *Daubert v. Percy*, 713 F.2d 328 (7th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984).

## ORDER

1. Plaintiff's Motion to Show Cause is hereby granted. Defendant Barry's Motion for Relief from Judgment is hereby overruled.

2. Defendant Barry is in contempt of Court. She shall purge herself of her contempt forthwith by bringing the ADC program in Ohio into compliance with the permanent injunction of January 22, 1971, by maintaining compliance with the injunction at all times in the future, and by restoring lost ADC benefits (i.e., cash assistance and Medicaid coverage) to all class members who have been, are being, or will be denied any benefits under the standard filing unit rule, OPAM § 4150 and OAC § 5101:1–21–011, as presently written.

3. Defendant Barry shall forthwith promulgate a revised version of OPAM § 4150 and OAC 5101:1–21–011 that adds in bold print at the beginning of each: "Specifically excluded from this requirement are children receiving Title II (OASDI) benefits through a representative payee. The Title II income of a minor beneficiary shall not be deemed as income to the child's parents or other caretakers or siblings, unless actually or legally made available to them."

4. Defendant Barry shall, within 15 days of this order, submit to the Court for approval and to plaintiffs' attorneys for comment:

A. A letter to be provided to the director of each county welfare department directing strict compliance with the revised OPAM and OAC provisions and directing that each employee involved in the administration of the ADC program be actually notified of this revised rule and the reasons for it, and including a copy of the final order entered January 22, 1971, a copy of this memorandum and order, and a copy of the revised OPAM and OAC provisions.

B. A poster informing applicants and recipients of the revised policy and a cover letter to each county welfare department director directing that at least two copies of the poster be prominently posted in each waiting area for a period of six months.

5. Defendant Barry shall, within 30 days of this order, submit to the Court for approval and to plaintiffs' attorneys for comment a plan for restoring lost ADC benefits to class members who, since October 1, 1984, have been denied ADC benefits and who have had benefits reduced or terminated as a result of the enforcement of the standard filing unit rule. The plan shall include a procedure for identifying class members, for notifying them, for providing lost benefits to them, for providing a fair hearing process to resolve disputes; shall include a timetable for doing so within 60 days; and shall include a provision for reporting to the Court about the implementation and results of these procedures.

6. Defendant Barry shall pay plaintiffs' costs and reasonable attorney fee, application for which shall be made after defendant Barry certified to the Court that she has accomplished all the relief ordered above.

IT IS SO ORDERED.